UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JANE DOE,

        Plaintiff,

v.                                   Case No. 07-C-781

TIME WARNER CABLE OF
SOUTHEASTERN WISCONSIN, L.P. and
ROGER WERNER,

        Defendants.

**DECISION AND ORDER**

In this action which arises under the court's diversity jurisdiction, 28 U.S.C. § 1332, the plaintiff sued a co-employee and her employer for injuries she claims she sustained as a result of a sexual assault and battery by the co-employee. The employer, defendant Time Warner Cable, has moved to dismiss all claims against it, arguing that it cannot be held liable for the actions of the co-employee, defendant Roger Werner. Plaintiff protests that if Werner were acting in the scope of his employment, the doctrine of *respondeat superior* would impose liability on the employer. More to the point, she believes that whether Werner's actions were within the scope of his employment is a question of fact not appropriate for resolution in a motion under Fed. R. Civ. P. 12(b)(6). Because I agree with Time Warner that the facts alleged do not support application of the *respondeat superior* doctrine, the claim against it will be dismissed.

**I. The Allegations of the Complaint**

For purposes of a motion to dismiss, I take the allegations of the complaint as true.

*Moranski v. Gen. Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005). According to the complaint, plaintiff was a senior account executive with Time Warner Cable, and defendant Roger Werner was a senior vice-president who lived in Minnetonka, Minnesota. On May 8, 2006, Werner and plaintiff met in Appleton, Wisconsin, at which time Werner is alleged to have exposed Doe's body and made sexual contact with her. This was done with the intent to assault Ms. Doe and cause her extreme emotional distress, and the acts were committed (the complaint alleges) in Werner's capacity as a manager with Time Warner. The event resulted in a level of emotional distress that prevented Doe from continuing to work for Time Warner and caused her to be constructively discharged.

## II. *Respondeat Superior*

Under Wisconsin law, the employer may be responsible for the deeds of its employee if the employee was acting within the scope of his employment at the time of the act in question. The complaint alleges that Werner's actions were committed in his role as a manager and were within the scope of his employment with Time Warner. Generally, the question involves factual determinations inappropriate for ruling at the pleadings stage, and thus a bare allegation as to the defendant's scope of employment is often sufficient to survive a motion to dismiss. Nevertheless, if the entirety of facts alleged in the complaint undercut that inference, the complaint may be dismissed. *See, e.g., Linden v. City Car Co.,* 300 N.W. 925, 926 (Wis. 1941) (complaint alleged intentional tort "wholly unconnected with the discharge of his duties.")

> An employee acts within the scope of his or her employment when he or she:
>
> is performing work or rendering services in obedience to the express orders or direction of his or her master, or doing that which is warranted within the terms of his or her express or implied authority, considering the nature of the services required, the instructions which he or she has received, and the circumstances under which his or her work is being done or the services are being rendered.

2

*Estate of Murray v. Travelers Ins. Co.*, 601 N.W.2d 661, 663 (Wis. Ct. App. 1999).

In analyzing whether an employee acts within the scope of employment, a court (or jury) is to focus on the employee's intent at the time the act occurred. *Stephenson v. Universal Metrics, Inc.,* 2001 WI App 173, 633 N.W.2d 707, 712 (Wis. Ct. App. 2001). The *Stephenson* court summarized several of the other considerations involved:

> [A]n employee acts within the scope of his or her employment as long as the employee is, at least, "partially actuated by a purpose to serve the employer." On the other hand, an employee does not act within the scope of his or her employment if the employee does something that "is different in kind from that authorized [by the employer], far beyond the authorized time or space limits [established for the employment], or too little actuated by a purpose to serve the" employer. Moreover, "[s]erving the employer need not be the sole purpose of the employee's conduct, nor need it be even the primary purpose" for the employee to be acting within the scope of the employment.

*Id.* (citations omitted).

In *Stephenson,* upon which plaintiff relies, an employee named Devine had allegedly been promised a ride home from a company party by another employee, Kreuser, but Kreuser (the defendant) failed to drive him home. Devine became drunk, attempted to drive himself home, and killed another motorist (and himself) in the process. The estate of the other motorist sued Kreuser and his employer. In assessing whether Kreuser was acting within the scope of his employment when he promised to drive Devine home, the court noted that Kreuser was part of company management and could have been motivated by a desire to serve his employer by attempting to keep Devine out of trouble:

> Kreuser was part of Universal Metrics's management. Thus, although it might be entirely logical to conclude that he agreed to drive Devine home because, as he testified at his deposition, he was just being a "nice guy," that does not end the matter. A reasonable jury could also perceive that Kreuser had at least some business purpose in offering to drive Devine home. Devine was a valued employee. Either his

3

>arrest or involvement in an accident because he was driving while drunk would not only cause him personal problems that might decrease his job efficiency, but would also cause problems for Universal Metrics because he got drunk at a company party. This was not the first time that Devine had been in an alcohol-related crash. Moreover, Kreuser knew when he offered to drive Devine home that Devine had been previously convicted of drunk driving. . . . a reasonable jury could conclude that Kreuser was . . . at least "partially actuated by a purpose to serve the employer" in offering to drive Devine home.

*Id.* (citing *Olson v. Connerly,* 457 N.W.2d 479, 482-484 (1990)). As such, because the offer to drive Divine home from the company party conceivably had "at least some business purpose," the court concluded that it was at least a jury question as to whether Kreuser was acting within the scope of his employment. Plaintiff compares her case to *Stephenson*, suggesting that Werner, like Kreuser, could have had some business purpose in walking her to her car after their meeting (which is apparently when the assault occurred, though that is not alleged in the complaint.) He could have been expected to look out for her safety, a concern that could be expected to benefit their employer. Thus, in her view it would be premature to conclude at this stage that he was not acting within the scope of his employment when he walked her to her car.

The problem with this argument, however, is that the plaintiff was not injured by Werner's act of walking her to her car; she was injured by his sexual assault. The circumstances surrounding the intentional assault do not matter – in fact, the same analysis would apply even if the two had been *at work* and engaged *in work* at the time. The question is what the defendant's intent was at the time he committed the tort, not what the overall context was. *Stephenson* involved an allegation of a negligent act or omission on the part of a co-employee; it has no application when the co-employee is alleged to have committed an intentional tort motivated entirely by his own selfish desire. In fact, it strains logic even to suggest that he is acting within the scope of his employment

4

in such a case.

Other cases involving intentional assaults involve "at least some business purpose" – for example, a *maitre d'* who batters a non-paying restaurant customer, *Columbia by the Sea, Inc. v. Petty,* 157 So.2d 190 (Fla. Ct. App. 1963); or a bouncer at a bar who uses excessive force and injures a patron. *Country Roads, Inc. v. Witt,* 737 S.W.2d 362, 365 (Tex. Ct. App. 1987). Even if they go too far, such employees are still acting within the general scope of their duties and attempting (albeit ineptly) to further their employers' interests. In this case, on the other hand, it is obvious from the facts alleged in the complaint that there is no conceivable basis for concluding that Werner, in assaulting the plaintiff, was intending to benefit his employer. As the Wisconsin Court of Appeals noted in an unpublished case, such a scenario simply does not lend itself to employer liability:

> Meredith contends that a question of fact exists as to whether Smith was acting within the scope of this employment when he sexually assaulted her. She contends that his offer to care for her during the lesson promoted Moorland's [the employer] interests. Although contested in the summary judgment materials, for purposes of this appeal, it is not material whether Smith's offer to care for Meredith was within the scope of his employment. *At the time of the sexual assault, Smith was sexually aroused, and he touched Meredith's breast to satisfy his own sexual desire. There is no reasonable basis for arguing that, at that moment in time, he was motivated by any intent to further Moorland's interests.* Sexual arousal had changed his mental attitude, and he was acting outside of the scope of his employment.

*Meredith M. v. Pennsylvania General Ins. Co.,* 1994 WL 723794, *4 (Wis. Ct. App. 1994) (italics added). The same is true here: there is no plausible reading of the complaint that would suggest Werner had any intent to further Time Warner's interests at the time he allegedly assaulted the plaintiff.

Finally, the plaintiff apparently believes it is enough that the assault occurred after a business

5

meeting that Time Warner facilitated.  In other words, Werner's opportunity to commit the tort arose because of the business relationship fostered by Time Warner.  Yet presumably that is true of almost any tort committed in the workplace context: any act of violence or assault occurring under the employer's roof would, under the plaintiff's theory, be imputed to the employer merely because there would have been no relationship at all *but for* the employment context.  That is not what the law provides, however.  The employer is not liable unless the employee was furthering an employment purpose – not merely because the tort occurred at work or a work-related function.  Accordingly, because the facts alleged in the complaint, even if true, do not support a finding of employer liability, all claims against defendant Time Warner are dismissed.

**SO ORDERED** this 19th day of November, 2007.

  s/ William C. Griesbach
William C. Griesbach
United States District Judge